IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NIKE, INC.,                                         CV 01-1459-BR

       Plaintiff,                               OPINION AND ORDER

v.

ROY DIXON,

       Defendant.


**BARBEE B. LYON**
**JON P. STRIDE**
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Ave.
Portland, OR 97204
(503) 802-2034

**MARK T. BANNER**
**CHRISTOPHER J. RENK**
**ERIK S. MAURER**
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
(312) 463-5000


1   -   OPINION AND ORDER

            Attorneys for Plaintiff

**GORDON S. GANNICOTT**
Hollander, Lebenbaum, Gannicott
1500 S.W. First Ave., Suite 700
Portland, OR 97201
(503) 222-2408

**MARIA P. SPERANDO**
Gary, Williams, Parenti, Finney, Lewis
McManus, Watson & Sperando, P.L.
221 East Osceola St.
Stuart, FL 34994
(772) 283-8260

**MELVIN K. SILVERMAN**
Silverman Santucci LLP
500 West Cypress Creek Road, Suite 500
Fort Lauderdale, FL 33309
(954) 351-7474

            Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Nike, Inc's Motion for Summary Judgment (# 201) against Defendant Roy Dixon's Counterclaims.  For the following reasons, the Court **GRANTS** Nike's Motion and **DISMISSES** Dixon's counterclaims **with prejudice**.

### FACTS

For purposes of Nike's Motion for Summary Judgment, the following facts are undisputed or, if disputed, are viewed in the light most favorable to Dixon.

Dixon has been engaged in the research and development of

2  -  OPINION AND ORDER

athletic footwear since 1994. Nike has been engaged in the research, development, manufacture, and sale, *inter alia, of* athletic footware since the late 1960s.

Dixon received a patent in 1996 for a shock-absorbing athletic shoe with removable inserts in the heel. In 1996 and 1997, Dixon sent a prototype of the shoe to Nike and three other manufacturers: Reebok, FILA, and Z-Coil. Dixon, however, was unsuccessful in his efforts to sell his patent.

Dixon ultimately modified the shoe as a "second prototype" and called it the "Shockee 2000." In 1999 and twice in 2000, he resubmitted his patent to Nike for review with a cover letter, a copy of his 1996 patent, photographs of the shoe, and a brochure. Nike, however, did not solicit Dixon's submission. Nike returned Dixon's submission and stated it was not interested in his patent and had not reviewed his submissions. Dixon did not identify or mark as confidential any of the items in his submission to Nike, and he did not ask Nike to sign a confidentiality agreement before reviewing the submission.

In April 2000, Dixon made an identical submission of his "Shockee 2000" shoe to Adidas and signed an agreement with Adidas that it would not treat his submission as confidential.

In fall 2000, Nike introduced a new line of athletic shoes called "NIKE SHOX" into the market.

3 - OPINION AND ORDER

**THE PARTIES' CLAIMS**

**1.   Nike's Claims.**

Nike seeks a declaratory judgment that:

   a. Nike did not infringe on Dixon's shoe patent,

   b. Dixon's shoe patent is unenforceable,

   c. Dixon did not submit trade secrets to Nike,

   d. Nike did not misappropriate trade secrets from Dixon, and

   e. Dixon is not entitled to trade secret protection.

**2.   Dixon's Counterclaims:**

Dixon seeks damages based on the following counterclaims:

   a. Nike misappropriated Dixon's trade secrets relating to Dixon's shoe design,

   b. Nike breached a confidential relationship with Dixon relating to Dixon's shoe design,

   c. Nike was unjustly enriched as a result of its breach of an implied contract not to use Dixon's confidential information relating to Dixon's shoe design,

   d. Nike negligently misrepresented to Dixon its intent to use Dixon's shoe design,

   e. Nike fraudulently misrepresented to Dixon that it had returned Dixon's shoe design materials without reviewing them, and

      f. Nike engaged in constructive fraud by representing to Dixon that it had returned Dixon's shoe design materials without reviewing them.

    Dixon also seeks an accounting.

## STANDARDS

    Fed. R. Civ. P. 56 authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

    An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually

implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

**1.  Misappropriation of Trade Secrets.**

In his first counterclaim, Dixon contends his design of the "Shockee 2000" shoe contained trade secrets that Nike misappropriated and included in its own design of the "NIKE SHOX" shoe that Nike marketed in fall 2000.

Dixon's counterclaim for misappropriation of trade secrets is governed by the Oregon Uniform Trade Secrets Act (OUTSA), Or. Rev. Stat. §§ 646.461-646.475. OUTSA protects against the misappropriation of certain types of confidential information labeled "trade secrets."

Or. Rev. Stat. § 646.641(4) includes as trade secrets:

6 -   OPINION AND ORDER

> [I]information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (b) *Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy*.

(Emphasis added.)

Nike contends, *inter alia*, that Dixon failed to take reasonable steps to protect the confidentiality of the information he submitted to Nike and, therefore, the information did not constitute "trade secrets" under Oregon law.  Dixon, however, asserts the "reasonableness" of his efforts to maintain the secrecy of his "Shockee Shoe" design is a question of fact for the jury.

In certain circumstances, some courts have concluded the issue of reasonableness is a jury question.  *See, e.g., Amvac Chem. Corp. v. Termilind, Ltd*, No. 96-1580, 1999 WL 1279664 (D. Or. Aug. 3, 1999).  In *Amvac,* the defendant alleged the plaintiff waived its right to claim its manufacturing and testing methods for pesticide were trade secrets when it submitted those methods to the EPA.  Under the circumstances in *Amvac*, the court held whether the plaintiff acted reasonably to protect the secrecy of

7 - OPINION AND ORDER

its methods was a question of fact for the jury to decide. *Id.,* at \*6. *See also Rockwell Graphic Sys., Inc. v. Dev. Ind., Inc.*, 925 F.2d 174, 177 (7th Cir. 1991) (the mere fact the plaintiff gave piece-part drawings of presses to vendors for a particular purpose did not mean the plaintiff forfeited trade secret protection).

Other courts, however, have held under certain circumstances that the issue was not a question for the jury because no reasonable juror could conclude reasonable steps were taken to preserve the confidentiality of the alleged trade secrets.

In *Auto Channel, Inc.*, the plaintiffs developed a concept for a new cable television channel "designed to capture the American male's interest in moving vehicles." 144 F. Supp. 2d 784, 787 (W.D. Ky. 2001). After producing some pilot shows and putting together a business plan, the plaintiffs sought financing for their venture by presenting their plan to a wide variety of potential investors, including the defendants. The plaintiffs did not mark the promotional materials with labels that designated the information as confidential or proprietary, they did not send a nondisclosure request with the materials, and they did not require potential investors to sign a nondisclosure agreement. Although the plaintiffs engaged in protracted discussions with one of the defendants, the defendants eventually

8 -   OPINION AND ORDER

invested in Speedvision, a different channel, which shared many attributes with the plaintiffs' proposed channel. The court concluded the circumstances of the disclosure "convincingly preclude[d]" any confidentiality claim under the Kansas UTSA as to information contained in the pilot episodes and the unsolicited business plans because such information was not secret. *Id.* at 795.

In *Gemisys Corp. v. Phoenix Am., Inc.,* the plaintiff disclosed its alleged trade secrets to the defendant without any indication that those materials were confidential or trade secrets. 186 F.R.D. 551 (N.D. Cal. 1999). The court rejected the plaintiff's assertion that the reasonableness of its efforts to protect the secrecy of the information was a question of fact for the jury and noted "courts routinely summarily adjudicate cases in which the plaintiff did not take steps to ensure the confidentiality of its material." *Id.* at 558. Accordingly, the court held the plaintiff failed to raise triable issues of fact "in light of its lax treatment of these alleged trade secrets." *Id.*

In *Webb Communication Group, Inc. v. Gateway 2000, Inc.*, the court granted summary judgment on the plaintiff's UTSA claim because the plaintiff disclosed the alleged trade secrets to another competitor as well as to suppliers and printers without

9 - OPINION AND ORDER

designating the disclosures as "confidential" and without requiring the recipients to sign confidentiality agreements. 889 F. Supp. 316, 320 (N.D. Ill. 1995).  *See also In re Dippin' Dots Patent Litig.*, 249 F. Supp. 2d 1346, 1375-76 (N.D. Ga. 2003) (court granted summary judgment under UTSA and stated,

"[B]ecause simple measures, such as identifying materials as trade secret and using a written confidentiality agreement, are available to protect sensitive information, the Uniform Act will not imply a confidential relationship" between two independent companies).

Here the information Dixon disclosed to Nike and other manufacturers from 1995 until 2000 relating to the original and the modified design of the "Shockee 2000" shoe was unsolicited, and none of the information was identified as confidential.  In addition, none of the parties, including Nike, was asked to sign a confidentiality agreement either before, on, or after receiving the information from Dixon.  Moreover, Dixon signed an agreement with another manufacturer, Adidas, that the same information sent to Nike would not be confidential as to Adidas.  Finally, Dixon did not offer any evidence that he took further steps to preserve the confidentiality of the alleged trade secrets except to state he limited disclosure of the design information to his clergyman,

10 -   OPINION AND ORDER

some fellow employees at the correctional institute where he worked, and his "design and development team."

On this record, the Court concludes Dixon has failed to present evidence sufficient to establish a genuine issue of material fact exists as to whether Dixon took reasonable steps to protect the secrecy of the "Shockee 2000" shoe design.[1] Accordingly, this Court holds Nike is entitled to summary judgment as to Dixon's OUTSA counterclaim.

2.  **Breach of Confidential Relationship**.

Dixon contends his unsolicited submission to Nike of trade secrets contained in the design of his "Shockee 2000" shoe established a confidential relationship between him and Nike, and Nike breached that relationship when it allegedly misappropriated Dixon's trade secrets by using them in the design of its own "NIKE SHOX" shoe.

In response, Nike asserts it had no relationship with Dixon. The Court agrees.

Oregon courts have found the tort of breach of a confidential relationship has occurred when one party to a special relationship has misappropriated or disclosed facts that, because of the existence of a special relationship, the party

---

[1] In light of the Court's ruling that Dixon failed to take reasonable steps to protect the confidentiality of his alleged trade secrets, the Court need not address Nike's other defenses to Dixon's OUTSA counterclaim.

11 -   OPINION AND ORDER

should have kept secret.  *See, e.g., Humphers v. First Interstate Bank,* 298 Or. 706 (1985)(physician-patient relationship); *Erickson v. Christenson,* 99 Or. App. 104 (1989)(clergyman-parishioner relationship).  Oregon courts also have recognized the tort in circumstances when a trade secret has been disclosed, and the party disclosing the trade secret had an employment or contractual relationship with the owner of the trade secret.  *See, e.g., Kamin v. Kuhnau,* 232 Or. 139 (1962) (independent contractor disclosed trade secret).[2]

Here, however, the undisputed facts show Dixon did not have any  relationship with Nike.  In addition, the Court has already concluded the information Nike allegedly misappropriated did not contain trade secrets because Dixon made no reasonable efforts to protect the confidentiality of the information he gave to Nike.

Accordingly, the Court holds Nike is entitled to summary judgment against Dixon's second counterclaim for breach of a confidential relationship.

3.   **Breach of Implied Contract - Unjust Enrichment**.

Dixon contends Nike has been unjustly enriched by its alleged misappropriation of Dixon's trade secrets in his "Shockee 2000" shoe design.  Nike, however, asserts OUTSA preempts Dixon's

---

[2] *Kamin* was decided before the enactment of OUTSA, which preempts certain common law remedies for trade secrets violations.

12 -   OPINION AND ORDER

claim for unjust enrichment.

Recently this Court addressed the identical issue in *nMotion, Inc. v. Environmental Tectonics Corp.* This Court found:

> OUTSA "supersedes conflicting tort, restitution or other law of Oregon providing civil remedies for misappropriation of a trade secret." Or. Rev. Stat. § 646.473(1). OUTSA, however, does not preempt
>
> "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, or (2) other civil remedies that are not based upon misappropriating of a trade secret." Or. Rev. Stat. § 646.473(2).
>
> [Defendant] relies on cases from other jurisdictions that, like Oregon, have adopted UTSA and have held unjust enrichment and quasi-contract claims based on alleged misappropriation of trade secrets are preempted by UTSA. *See, e.g., Auto Channel*, 144 F. Supp. 2d at 790. In *Auto Channel,* the court noted a quasi-contract claim is restitutionary in nature even though it uses the language of contract law. The court further noted UTSA "arose to create a uniform business environment that created more certain standards for protection of commercially valuable information." *Id*. at 789. As such, UTSA provides "the only avenue for claims based on idea misappropriation." *Id*. at 790. *See also Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71 (D. Nev. 1992) (unjust-enrichment claim based on misappropriation of trade secrets is preempted under UTSA); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 731 (N.D. Ohio 1999) (misappropriation of trade-secrets claims based on quasi-contract/quantum meruit and unjust enrichment are essentially restitutionary in nature and are displaced by UTSA).

\* \* \*

The Court finds [Defendant's] arguments

13 -   OPINION AND ORDER

> persuasive. Accordingly, the Court concludes
> [Plaintiff], in effect, seeks restitution in
> its claims for quasi-contract and unjust
> enrichment based on the alleged misappropri-
> ation of the same alleged trade secrets that
> were the subject of its claims under OUTSA.
> OUTSA's remedies for restitution based on
> alleged misappropriations of trade secrets
> supersedes any restitution remedy under
> common law.

CV 01-524-BR, Opin. and Order at 30-31 (Oct. 27, 2003). For the same reasons the Court stated in *nMotion*, the Court holds Nike is entitled to summary judgment on Dixon's third counterclaim for unjust enrichment.

### 4. Negligent Misrepresentation.

Dixon seeks damages in his fourth counterclaim on the ground that Nike negligently misrepresented to Dixon that it had not reviewed Dixon's submission.

Under Oregon law, Nike is not liable to Dixon for damages arising from negligent misrepresentation unless a special relationship existed between Nike and Dixon. *Onita Pac. Corp. v. Bronson*, 315 Or. 149, 160 (1992). The Court already has concluded Nike had no relationship with Dixon.

Nevertheless, Dixon asserts he has established that a genuine issue of material fact exists as to whether Nike supplied Dixon with "non-gratuitous information" and, thereby, had a duty to avoid misrepresenting facts. *See Lindstrand v. Transamerica Title Ins. Co.*, 127 Or. App. 693, 697-98 (1994).

14 -   OPINION AND ORDER

In *Lindstrand*, the defendant title company provided incorrect information to its customer at closing regarding certain height restrictions on the property the customer purchased. The customer brought a negligence action against the title company. Although the title company originally may not have had a duty of reasonable care to provide accurate information regarding height restrictions on the property, the court held the title company assumed that duty as a "nongratuitous supplier of information" based on an existing business relationship with the customer. In contrast, when Nike returned Dixon's submission and stated in an accompanying letter that it had not reviewed the materials contained in the submission, Nike had no relationship with Dixon, business or otherwise.

The Court concludes the facts in *Lindstrand* are inapposite to the facts in this case and do not support any claim for negligent misrepresentation. On this record, therefore, the Court holds Nike is entitled to summary judgment on Dixon's fourth counterclaim.

5.  **Fraud**.

Dixon alleges Nike defrauded him when it stated in a letter that it was returning Dixon's submission's "unreviewed."

In *Webb v. Clark*, 274 Or. 387, 391 (1976), the Oregon

15 -   OPINION AND ORDER

Supreme Court sets out the nine elements a party must prove to prevail on a claim of fraud. To satisfy those elements and defeat summary judgment, Dixon must present sufficient evidence to establish a genuine issue of material fact exists as to whether Nike knowingly made a false representation of a material fact with the intent that Dixon rely on the representation; that Dixon, ignorant of the falsity of the representation, relied on it; and that Dixon was damaged as a result.

Nike presented Dixon's deposition testimony, which reflects Dixon testified he did not rely on Nike's letter because he did not recall receiving the letter until Nike's counsel sent the letter to Dixon's counsel. Dixon's counsel allegedly received the letter after Nike filed this action. Pl.'s Mem. at 44, Dixon Dep. at 281-82. In any event, Dixon has failed to present any evidence to show how he was damaged even if Nike did misrepresent whether it reviewed Dixon's submission.

On this record, the Court concludes Dixon has failed to establish a genuine issue of material fact exists as to whether he relied on Nike's alleged misrepresentation or suffered damage as a result of it. Accordingly, the Court holds Nike is entitled to summary judgment on Dixon's fifth counterclaim for fraud.

**6.   Constructive Fraud.**

Dixon alleges Nike engaged in constructive fraud and, in

effect, reasserts the allegations in his fifth counterclaim for fraud. Even if Nike was mistaken when it stated it had not reviewed Dixon's submission, Dixon contends Nike later learned it had, in fact, reviewed the submission but failed to advise Dixon.

The Court concludes Dixon's counterclaim for constructive fraud fails for the same reason as Dixon's fraud counterclaim: Dixon has failed to establish a genuine issue of material fact exists as to whether he relied on or was damaged by Nike's alleged misrepresentation.

Accordingly, the Court holds Nike is entitled to summary judgment on Dixon's sixth counterclaim for constructive fraud.

**7.     Accounting.**

Dixon seeks an accounting based on his counterclaims. In light of the Court's conclusion that Nike is entitled to summary judgment as to all of Dixon's counterclaims, the Court also finds Nike is entitled to summary judgment as to Dixon's counterclaim for an accounting.

## CONCLUSION

For these reasons, the Court **GRANTS** Nike's Motion for Summary Judgment (#201) against Dixon's Counterclaims and **DISMISSES** Dixon's Counterclaims **with prejudice**.

IT IS SO ORDERED.

17 -   OPINION AND ORDER

DATED this 6th day of April, 2004.

                                  /s/ Anna J. Brown

                                  _____
                                  ANNA J. BROWN
                                  United States District Judge

Nike,cv-01-1459-O&O-msj-4-6-04.wpd

18 -   OPINION AND ORDER